AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT
for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with One (1) Target | ) | Case No.  **MJ23-505** |
| Accounts/Identifiers, for Investigation of 21 | ) | |
| U.S.C. § 841 and Other Offenses | ) | |

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachments A, located in Western District of Washington, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Possession with intent to distribute, and the distribution of, controlled substances; conspiracy to distribute controlled substances |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits.  Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days, to January 11, 2024, is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Christopher VandenBos, DEA Task Force Officer
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or

☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone

Date: October 13, 2023

_____
*Judge's signature*

United States Magistrate Judge Paula McCandlis
*Printed name and title*

City and state:  Bellingham, Washington

USAO 2023R00342 (TT6)

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number:

    a.      (218) 821-4680 (**Target Telephone 6 or TT6)**, whose service provider is Verizon, a wireless telephone service provider. Verizon is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. Investigators believe that **TT6** is being used by a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4) .

    The identity of the person who is the subject of the criminal investigation is Natasha Halani PARKHILL.

2.      The Target Cell Phone.

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

Attachment A1 - 1
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phone. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I: Information to be Disclosed by Verizon**

1.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long distance telephone connection records April 12, 2023, through the present;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions April 12, 2023, through the present;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days from the date of this warrant.**

a.    Verizon shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

(i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

(ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

(iv)    Source and destination telephone numbers and email addresses.

b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, Verizon shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

Attachment B - 2
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.    **Historical Cell Site Location Information.**

a.    All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from April 12, 2023 through the present, including:

i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.    historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by Verizon. Accordingly, this information includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, NELOS, TDOA, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone.

4.    **Prospective Cell Site Location Information.**

a.    All information about the location of the Target Cell Phone described in Attachment A for forty-five days, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A. This information also includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone.

Attachment B - 3
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.    All information about the location of the Target Cell Phone described in Attachment A for a period of 45 days, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

## II.    <u>Section</u> II: Information to Be Seized by the Government

6.    All information described above in Section I that will assist in arresting Natasha Halani PARKHILL, who was charged with violating Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846, and is the subject of an arrest warrant issued on April 12, 2023, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

8.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

Attachment B - 4
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.      Location Information regarding the Target Cell Phone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon in order to locate the things particularly described in this Warrant.

Attachment B - 5
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON      )
                             )     ss
COUNTY OF WHATCOM      )

I, Christopher L. VandenBos being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

### Application for a Tracking Warrant for Target Cell Phone

1. I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone(s) (hereafter, the "**Target Telephone**"):

a. **Target Telephone 6 (TT6)**, assigned call number (218) 821-4680, whose service provider is Verizon, a wireless telephone service provider. Verizon is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. **TT6** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Investigators believe that **TT6** is being used by a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

### ECPA

2. The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is the Western District of Washington, a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### Pen Register Act

3. Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrants are designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 1
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. The Court has jurisdiction to issue the requested pen-trap orders because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

5. This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Stephen Hobbs that (1) identifies the Drug Enforcement Administration as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

7. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrants will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the **Target Telephone** without geographic limit.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 2
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order, through Attachment B of the requested warrants that T-Mobile, Sprint, AT&T, Verizon, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the Drug Enforcement Administration, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

9.     This is the **first** application in this judicial district for a search warrant authorizing disclosure of the above information for **Target Telephones 6** in connection with this investigation.

10.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.     I, Christopher L. VandenBos, am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7) and a "general authority Washington peace officer" within the definition of RCW 10.93.020. Specifically, I am a commissioned Sheriff's Deputy with the Whatcom County Sheriff's Office. I have been employed by the Whatcom County Sheriff's Office since June 2015. In that capacity, I investigate violations of the Revised Code of Washington (RCW). In January 2019, I assumed the role of a Narcotics Detective with the Whatcom Gang and Drug Task Force, with the focus of my responsibilities including the investigation of mid to upper-level drug traffickers.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 3
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     I am also a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office.  In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq*.).  I have been assigned as a Task Force Officer with the DEA since January 2019. During my time conducting investigations with the DEA, I have written and sworn to multiple federal and state search warrants and orders related to the installation of pen registers, trap and trace, and real-time location information for mobile devices. I have written multiple state and federal search warrants for data stored by social media platforms, and am familiar with the technologies used by Facebook, Instagram, Snapchat, Google, and other companies, and how it relates to tracking an individual's movement, either live or historical.

13.     I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, a forty-hour Criminal Investigations Using Cellular Technologies course hosted in Las Vegas, Nevada, a twenty-four hour Fugitive Mission Planning and Cellular Investigative Techniques course hosted in Bellingham, Washington, a forty-hour DEA Task Force Officer School hosted in Quantico, Virginia, and other training courses related to criminal street gangs, narcotics trafficking, electronic surveillance, money laundering, and fentanyl-related overdose deaths. I have completed hundreds of hours of law enforcement related training, to include investigatory techniques, surveillance, evidence collection, cell phone technology, and other topics.

14.     As a Whatcom County Sheriff's Office Detective, I have participated in multiple death investigations, including homicide, overdose, and natural death investigations. I have participated in fugitive operations spanning multiple states, and have used my training and experience as it relates to electronic evidence to capture wanted subjects who were fleeing from law enforcement.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 4
USAO 2023R00342

15.     Based on my training and experience, I have become familiar with the techniques and methods used by drug traffickers to distribute controlled substances, their use of vehicles, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of drug trafficking. I have participated in hundreds of hours of surveillance on narcotics traffickers. I have examined narcotics related pay/owe ledgers, supplier lists, and cell phone content, and understand how they are used in relation to drug sales and trafficking. During the course of my employment, I have served search warrants and conducted narcotics-related interviews in Washington and other states, and have discussed drug trafficking and money laundering trends with members of federal and state law enforcement from across the United States, as well as those working in other countries.

16.     I have experience acting in an undercover capacity. I have purchased controlled substances such as fentanyl-laced pills, fentanyl-laced powder, cocaine, heroin, and methamphetamine while acting in an undercover capacity. While acting in an undercover role, I have arranged narcotics transactions, discussed counter-surveillance methods to avoid law enforcement, and discussed prices, quantity, and quality of various controlled substances.

17.     I have attended a course instructed by the Canadian Royal Mounted Police (RCMP) Clandestine Laboratory Enforcement and Response team, which discussed topics on synthetic drug manufacturing, including information regarding fentanyl in powder and pill form. During that training, I participated in a pill encapsulating demonstration using a pill press and other equipment.

18.     In the year 2014, I obtained a Bachelor of Arts (BA) from Western Washington University in Sociology, with an emphasis in Criminology. During that time, I completed research courses involving Mexico-based drug trafficking networks, statistics, and data analytics. I also obtained a minor degree in Spanish Language.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 5
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19.     I speak Spanish at the conversational level. I have used Spanish to interview confidential informants, witnesses, and suspects during the course of state and federal narcotics investigations. In my role as a Task Force Officer with the Drug Enforcement Administration, I have participated in Title III wiretap investigations, and have monitored live phone intercepts between Spanish-speaking drug traffickers. While monitoring these phone intercepts, I have spoken with certified Spanish translators, who have further explained common slang terms, expressions, and code words used by drug traffickers for narcotics-related language and terms.

20.     I have participated, both as case agent and in supporting roles, in multiple state and federal investigations which have led to convictions. This Affidavit is based on information I have gained from my own investigation, personal observations, training and experience, as well as information related to me by other detectives, investigators and police officers through oral and written reports. This Affidavit is meant to establish probable cause; therefore, I have not included every fact known to me at this time. I have reviewed and am familiar with the investigative file in this matter.

21.     Based on the facts set forth in this affidavit, there is probable cause to believe that **TT6** is being used by a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

### SUMMARY OF INVESTIGATION

22.     The United States, including the Drug Enforcement Administration ("DEA"), the Whatcom County Sheriff's Office ("WCSO"), and the U.S. Marshals Service ("USMS"), are conducting a criminal investigation of NATASHA PARKHILL and ROBEL GEBREMEDHIN, and other known and unknown, regarding possible violations of 21 U.S.C. § 841(a)(1) and 846 (Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute).

//

//

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 6
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Issuance of Arrest Warrants

23.    On March 30, 2023, the Honorable United States Magistrate Judge Mary Alice Theiler signed a Criminal Complaint based on the testimony of DEA Task Force Officer Christopher L. VandenBos. Federal warrants of arrest were subsequently issued through United States District Court for the Western District of Washington for the following individuals:

- Robel Sisay GEBREMHEDIN for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846; Unlawful Possession of a Firearm and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, all in violation of 18 USC §§ 922 (g)(1) and 924(c). *Case No. MJ23-145-1.*

- Mohamed Abdirisak MOHAMED for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846; Unlawful Possession of a Firearm and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, all in violation of 18 USC §§ 922 (g)(1) and 924(c). *Case No. MJ23-145-2.*

- Abdurman AHMED for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846. Case No. *MJ23-145-3.*

- Daniel John FAIX for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846. Case No. *MJ23-145-4.*

- Natasha PARKHILL for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846. Case No. *MJ23-145-5.*

- Matthew ANDERSON for Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846. *Case No. MJ23-145-6.*

24.    On March 30, 2023, investigators located and arrested Ahbdurman AHMED in Lynnwood, WA. On March 31, 2023, investigators located and arrested Mohamed Abdirisak MOHAMED in Bellingham, WA. On March 4, 2023, investigators located and arrested Daniel FAIX in Bellingham, WA. On June 7, 2023, investigators

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 7
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

located and arrested Matthew ANDERSON in Bellingham, WA. Investigators were unable to locate Natasha PARKHILL or Robel GEBREMHEDIN.

25.     On April 12, 2023, a Grand Jury sitting in the Western District of Washington returned an indictment charging the above-listed individuals – including Natasha PARKHILL – with multiple drug related counts under CR23-053-RAJ. A federal warrant was issued for Robel GEBREMHEDIN and Natasha PARKHILL's arrest.

26.     Investigators continue to seek the arrest of Natasha PARKHILL and Robel GEBREMHEDIN as it relates to this investigation. Investigators have received information that Robel GEBREMHEDIN has fled the country. The United States Marshal's Service ("USMS") is assisting the DEA in locating PARKHILL and GEBREMHIDIN.

27.     On September 19, 2023, members of the Lummi Nation Police Department responded to 2781 Lummi Shore Road, Bellingham, Washington to investigate a suspected drug overdose. Two individuals were found at that location, both deceased from a suspected drug overdose. One of the deceased individuals was identified as Daniel WASHINGTON. A cell phone was located in the vicinity of WASHINGTON's body. On September 26, 2023, Lummi Tribal Court Judge Randy Doucet approved a search warrant for that device, which was subsequently searched by investigators. Based on the contents of the device, it appeared to belong to WASHINGTON.

28.     In that device, investigators found a text message thread between Daniel Washington, using phone number 425-343-7031, and the cell phone number 218-821-4680 (hereinafter referred to as **Target Telephone 6** or **TT6**). The text message thread began on July 28, 2023. In the text message thread, the user of **TT6** indicated they were having surgery, and asked WASHINGTON to visit them. Investigators believe, based on the following, that **TT6** is being used by Natasha PARKHILL, who has been evading arrest while living in the state of Wyoming.

29.     On July 31, 2023, the following exchange took place:

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 8
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Sender | Date/Time | Message |
|--------|-----------|---------|
| **TT6** | 7/31/23 3:30 PM | No more meth and it should heal itself |
| WASHINGTON | 7/31/23 4:31 PM | I am still coming |
| **TT6** | 7/31/23 4:31 PM | I love u too I should b out in a couple days |
| WASHINGTON | 7/31/23 4:32 PM | I hope to be omw |
| WASHINGTON | 7/31/23 4:33 PM | Lady k says hi and she loves you. Her and Paul and Ken are here |
| **TT6** | 7/31/23 10:01 PM | Look I really need ur help down here pls just get in the car and come on it's life or death prison or freedom rn |
| **TT6** | 7/31/23 10:08 PM | My son's gf said he can't help.me and he's listening to herand I literally have no one else here she says to go turn myself in the prisons have great medical haha wtf pls come do own here pls I got no one else to call on fuck put the bag down and come one bro pls. |
| WASHINGTON | 7/31/23 10:20 PM | Ok I'm doing my best here. I'll be coming asap. I need more work rn |
| **TT6** | 7/31/23 10:21 PM | Fuck that pls just come on it's a loop and it's never ending u know that |
| **TT6** | 7/31/23 10:49 PM | Qmcome.on Danny pls |

30.     Investigators believed that PARKHILL, using **TT6**, was asking WASHINGTON to visit her and help her through a medical situation. In the subsequent thread, WASHINGTON appears to agree to visit PARKHILL. On August 6, 2023, **TT6** sent a message to WASHINGTON that read "Cheyenne motel rm 6 call me when u get here I'm going to bed".

31.     On September 12, 2023, at 10:23 AM, investigators saw that WASHINGTON sent the following image to **TT6**, which investigators recognized as a Cash App QR code:

//

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



32.     Investigators knew, based on their training and experience, that the Cash App QR code can be a way to identify or locate another Cash App account on the peer-to-peer payment application to make or request a payment to another user.

33.     Investigators searched email records saved to the WASHINGTON's cell phone, and located the following:

//

//

//

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 10
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

From:       cash@square.com
Received:   9/12/2023 10:24:55 AM
To:         elijahmurfather12@gmail.com
Subject:    Natasha Parkhill sent you $70

N

Natasha Parkhill
Payment from $tash123tash123

# $70.00

Received

| Amount | $70.00 |
| Destination | Cash |
| Identifier | #6SRT3M4 |
| To | Daniel Washington |
| From | Natasha Parkhill |

34.     The email from cash@square.com appeared to document a payment of $70 from a Cash App user named "Natasha Parkhill". The email was timestamped on September 12, 2023 at 10:24 AM. Investigators believed, based on the timing between the QR code being sent and the email payment notification, that PARKHILL had sent $70.00 to WASHINGTON over Cash App after receiving the Cash App QR code over text message.

35.     While reviewing text message threads between WASHINGTON and other individuals, investigators saw that WASHINGTON made multiple references to being in Wyoming, and visiting "home girl".

36.     On October 11, 2023, investigators reviewed subscriber information related to **TT6**, which was received from Verizon in response to an administrative subpoena. Investigators observed that **TT6** had been activated on July 18, 2023. The phone was subscribed to the reseller Tracfone.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 11
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

37.    Investigators believe, based on their training and experience, that the information requested through this Application will lead to the location and eventual arrest of Natasha PARKHILL.  Investigators believe, based on their training and experience, that historical location data will be of importance in locating and arresting PARKHILL. Historical location data and call detail records can assist investigators in establishing a pattern of life, common contacts, and the identifying information on individuals who may be offering criminal assistance to PARKHILL in their flight from law enforcement. These records can assist investigators in identifying additional addresses or locations where PARKHILL may be concealing themselves from law enforcement. For those reason, investigators are seeking historical records from April 12, 2023, through the present.

## KNOWLEDGE BASED ON TRAINING AND EXPEREINCE

38.    Based on my training, experience, and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, to include their use of cellular phones and other electronic communication devices to facilitate their trafficking activity. I know drug traffickers use cellular phones to communicate with suppliers, re-distributors, and customers. These communications via cellular phone often include discussing details around drug deals such as time and place of drug transactions, types of drugs, amounts of drugs, methods of payment for drugs, and quality of drugs sold or bought, amongst other things. I know that it is common for drug traffickers to use multiple phones as well as change phone numbers regularly. They use different telephones to help compartmentalize their drug trafficking activities. This might entail using specific phones for their personal life and other phones for drug activity. Or it might include using different phones for different individuals or aspects of their business, such as using certain phones to contact suppliers and other phones to contact redistributors. This compartmentalizing is especially common for individuals in leadership positions. Drug traffickers often try to keep the various components and organization members separate to protect parts of the organization

from detection by law enforcement. For example, if one individual or arm of a drug trafficking organization (DTO) is arrested or seeks to assist law enforcement, that person could do less damage to the organization if the leadership limits what he or she knows about other parts of the DTO. Drug traffickers also use multiple cell phones to frustrate law enforcement interception and monitoring. Where there are multiple cell phones, law enforcement may learn of one part of the organization's activities by intercepting one phone, but they would not receive information as to the overall activities of the DTO. Thus, the use of multiple cell phones helps the survival of the overall organization.

39.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

40.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 13
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

41.    Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

42.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

43.    In my training and experience, I have learned that T-Mobile, Sprint, AT&T, and Verizon are companies that provide cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 14
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

44.    Based on my training and experience, I know that T-Mobile, Sprint, AT&T, and Verizon can collect E-911 Phase II data about the location of the Target Telephones, including by initiating a signal to determine the location of the Target Telephones on their networks (T-Mobile, Sprint, AT&T, and Verizon) or with such other reference points as may be reasonably available.

45.    When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

46.    Based on my training and experience, I know that T-Mobile, Sprint, AT&T, and Verizon can collect cell-site data about Target Telephones. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile, Sprint, AT&T, and Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

47.    Different service providers use different systems, applications, and reports to collect or analyze cell site data. These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 15
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE, Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI). RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

48.     Based on my training and experience, I know that wireless providers such as T-Mobile, Sprint, AT&T, and Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile, Sprint, AT&T, and Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

49.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to the Target Telephones, Attachment A specifies that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 16
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## AUTHORIZATION REQUEST FOR TARGET TELEPHONE

50.    Based on the fact set forth in this affidavit, there is probable cause to conclude that violations of 21 U.S.C §841 and §846 (distribution of controlled substances and conspiracy to distribute controlled substances) have been committed by the user of the target telephone. The requested information, including prospective location information, for the target telephone(s) will help law enforcement monitor and locate the user of the target telephone, follow their movements when they are at locations that are otherwise hard for law enforcement to observe, and eventually effect an arrest. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning the location of the person to be arrested.

51.    Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order for the **Target Telephone**, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and 18 U.S.C. § 3123.

52.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of the Target Telephone(s) until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 17
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Telephone(s) would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

53.    I further request that the Court direct Verizon to disclose to the government any information described in Attachments B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Telephone(s) on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

//

//

//

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 18
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

54.    Pursuant to 18 U.S.C. § 2703(g), the government will execute these warrants by serving the warrants on Verizon. Because the warrants will be served on T-Mobile, Verizon, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

Christopher L. VandenBos, Affiant
Task Force Officer
Drug Enforcement Administration

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on this 13th day of October, 2023.

HON. PAULA L. McCANDLIS
United States Magistrate Judge

AFFIDAVIT OF TFO CHRISTOPHER VANDENBOS - 19
USAO 2023R00342

# EXHIBIT 1

## DECLARATION

I, Stephen Hobbs, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the Drug Enforcement Administration ("DEA") and the U.S. Marshal's Service ("USMS") are the law enforcement agencies conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by those agencies.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 13th day of October, 2023.


s/ Stephen Hobbs
STEPHEN HOBBS
Assistant United States Attorney

Exhibit 1: Declaration - 1
USAO 2023R00342

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number:

a.      (218) 821-4680 (**Target Telephone 6 or TT6)**, whose service provider is Verizon, a wireless telephone service provider. Verizon is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. Investigators believe that **TT6** is being used by a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4) .

The identity of the person who is the subject of the criminal investigation is Natasha Halani PARKHILL.

2.      The Target Cell Phone.

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

Attachment A1 - 1
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phone. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by Verizon**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records April 12, 2023, through the present;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions April 12, 2023, through the present;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

       g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

    2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days from the date of this warrant.**

       a.    Verizon shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

       (i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

       (ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

       (iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

       (iv)    Source and destination telephone numbers and email addresses.

       b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, Verizon shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

Attachment B - 2
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.     **Historical Cell Site Location Information.**

a.     All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from April 12, 2023 through the present, including:

i.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.     historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by Verizon. Accordingly, this information includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, NELOS, TDOA, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

4.     **Prospective Cell Site Location Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A for forty-five days, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A. This information also includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

Attachment B - 3
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.    All information about the location of the Target Cell Phone described in Attachment A for a period of 45 days, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

II.    **Section II: Information to Be Seized by the Government**

6.    All information described above in Section I that will assist in arresting Natasha Halani PARKHILL, who was charged with violating Conspiracy to Distribute Fentanyl and Possession of Fentanyl with Intent to Distribute, all in violation of 21 USC §§ 841(a)(1) and 846, and is the subject of an arrest warrant issued on April 12, 2023, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

8.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.    Location Information regarding the Target Cell Phone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon in order to locate the things particularly described in this Warrant.

Attachment B - 5
USAO 2023R00342

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970